* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Hall with modifications, including modification to plaintiff's entitlement to temporary total disability compensation.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between the employee and employer on May 30, 2007.
5. The employee's average weekly wage at the time of the accident needs to be determined by a Form 22.
6. Prior to the start of the evidentiary hearing, defendant-employer stipulated that they were subject to the Act in that they had two statutory employees and plaintiff was an employee.
7. The following were marked and received into evidence as exhibits:
 a. Stipulated Exhibit No. 1 — PTA, medical records, and corporate documents, payroll summary, employee journal, payroll records, accounting of rents and utilities.
 b. Plaintiff's Exhibit No. 1 — Form 19.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. At the time of the accident that is the subject of this claim, an employment relationship existed between plaintiff and defendant, Richway Development Corporation. Richway Development Corporation is in the business of building houses and selling them to buyers in and around Rocky Mount, North Carolina.
2. On May 30, 2007, Richway Development Corporation had two executive officers, L. Wayne Ferrell, President, and Peggy J. Thursby, Secretary-Treasurer, who are considered employees of the corporation. In addition, Richway Development Corporation hired plaintiff on October 13, 2006. Richway Development Corporation also employed James Hinton and Tony Battle up until the date of plaintiff's injury. Richway Development Corporation had three or more employees and was subject to the North Carolina Workers' Compensation Act.
3. Defendant-employer did not have workers' compensation insurance at the time of plaintiff's accident and offered no evidence that they had any workers' compensation insurance from at least October 13, 2006 through May 30, 2007. Ms. Thursby, who in addition to being a corporate officer was Mr. Ferrell's accountant, filled out a Form 19 indicating that plaintiff worked for Prudential Real Estate, which was not the proper employer.
4. Defendant-employer hired plaintiff in October 2006 and paid him a fixed gross salary of $750.00 per week through the date of plaintiff's injury on May 30, 2007. Defendant-employer did not provide a Form 22. Plaintiff had an average weekly wage of $750.00, yielding a compensation rate of $500.00.
5. On May 30, 2007, plaintiff was preparing to frame a fireplace for defendant. The house was under construction and there was no electricity in the house. Plaintiff was in the process of running a drop cord from inside the garage to an electrical outlet near the street. As *Page 4 
plaintiff walked out of the garage door, the overhead tracking failed and the garage door fell down and struck plaintiff on the top of his head.
6. Plaintiff was transported to Nash General Hospital emergency room. William
John Wright, R.N., did the triage assessment of plaintiff, who told Mr. Wright that a garage door fell down on top of his head and caused him to lose consciousness for an unknown period of time. Plaintiff complained of a severe headache and neck pain, primarily in the area of C3.
7. Andrea Storey, R.N., performed a neurological assessment of plaintiff in the emergency room. At that time, plaintiff was cooperative, alert and fully oriented. Ms. Storey's assessment revealed that plaintiff had a Glascow Coma Score of 15, which is a normal score. According to Ms. Storey's note, plaintiff's loss of consciousness was less than five minutes.
8. Arun Manikumar, M.D., was the emergency room physician. Dr. Manikumar's physical examination revealed that plaintiff had a moderate hematoma and a superficial abrasion on the vertex of his scalp. Other than tenderness in the midline of the spine at C3-C5, plaintiff's neck was normal. Dr. Manikumar confirmed that plaintiff had a Glascow Coma Score of 15. Plaintiff demonstrated no focal motor deficits, no focal sensory deficits, no cerebellar deficits, no nystagmus, and no clonus. No Babinski was present. Plaintiff's speech and memory were normal and he was fully oriented, with normal affect, insight, and concentration.
9. Dr. Manikumar ordered a CT scan of plaintiff's head and cervical spine. The CT scan of plaintiff's head was normal and showed no injuries or abnormalities. The cervical CT scan was negative for fracture or dislocation, but did reveal degenerative disc disease at C6-C7 and C7-T1, with moderate spondylosis at these same levels.
10. Dr. Manikumar diagnosed a concussion, scalp abrasion, and cervical strain. He discharged plaintiff from the emergency room with instructions to return if his symptoms *Page 5 
worsened. Plaintiff was to take Motrin and Percocet every six hours. Plaintiff could increase his activities as tolerated.
11. On June 1, 2007, plaintiff presented himself to Jessica Brys Wilson, PAC, at Eastern North Carolina Medical Group for further evaluation and treatment. Ms. Wilson evaluated plaintiff for head and brain injury and concluded that plaintiff's neurological examination was normal.
12. Plaintiff complained of neck and back pain, which was exacerbated by movement and turning of his head. Ms. Wilson's examination revealed that plaintiff had sternocleido-mastoid tenderness and mild restricted motion in all directions secondary to pain. Plaintiff also demonstrated moderately reduced lateral motion, bilaterally, with muscle tone significantly increased in the thoracic spine.
13. Plaintiff also complained of left knee pain with active flexion and extension of the knee. Ms. Wilson found no joint effusion or crepitus in the knee. She ordered an x-ray of the knee, which showed the bones were normal in mineralization and no fractures or dislocations were identified. The patellofemoral joint appeared intact and the femoral condyles and tibial plateau appeared unremarkable.
14. Ms. Wilson prescribed Flexeril as needed for relief from muscle spasms and Lortab every 4 to 6 hours for pain. Plaintiff was to apply ice to his knee as needed for symptomatic relief and return for further evaluation on June 15, 2007. In the interim, he was to stay out of work.
15. Michael Dail, P.A., saw plaintiff at Eastern North Carolina Medical Group on June 12, 2007. At this visit, plaintiff complained of bilateral shoulder and neck pain and pain up *Page 6 
and down his spine to the top of his head. Plaintiff reported a new symptom of feeling like he was "in a fog" and that he believed that he was having difficulty with mentation.
16. Mr. Dail's examination of plaintiff was unremarkable. Cranial nerves II-XII were intact. Plaintiff demonstrated no focal deficits or weakness. He was oriented to person, place, time, and general circumstances. His mood and affect were appropriate. Plaintiff did have some tenderness in the posterior aspect of his neck and in both shoulders.
17. Ms. Wilson saw plaintiff again on June 15, 2007. Plaintiff complained of pain in his left neck and shoulder, paresthesias from his left knee to his ankle, and sleeplessness. His out-of-work note was about to expire and plaintiff did not feel that he was able to return to work.
18. Ms. Wilson addressed each of plaintiff's complaints in her treatment plan. For plaintiff's neck and shoulder pain, she continued him on Lortab and recommended that he follow-up at the pain clinic with Dr. Tannanis. Plaintiff was to see Dr. Pajeau, a neurologist, for evaluation of his post-concussive syndrome. Ms. Wilson gave plaintiff Rozerem for his insomnia and scheduled him for nerve conduction studies of his left knee and leg. She recommended that he not return to work pending the scheduled evaluations.
19. Dr. Aurora Pajeau, a board-certified neurologist, examined plaintiff on June 18, 2007. Dr. Pajeau found plaintiff to be alert and fully oriented. His speech and language were normal and his fund of knowledge was adequate. Examination of plaintiff's cranial nerves was normal. Plaintiff's sternocleido-mastoid and trapezii muscles were normal and he demonstrated normal 5/5 muscle strength in all major muscle groups tested in the upper and lower extremities with normal tone and bulk and no adventitious movements. Dr. Pajeau noted that plaintiff had severely limited range of motion in his cervical spine. *Page 7 
20. Based on the history and her examination, Dr. Pajeau was of the opinion that plaintiff was suffering from neck pain and post-concussive headache.
21. Dr. Pajeau recommended an MRI and physical therapy and wanted plaintiff to return after having the MRI done. Plaintiff did not have the money for the MRI and no medical bills had been paid, so plaintiff did not return to see Dr. Pajeau. Dr. Pajeau opined in her deposition that plaintiff could still benefit from physical therapy and a nerve conduction study, and needs to see an orthopedic surgeon for his knee problem.
22. In her deposition taken on February 8, 2008, Dr. Pajeau opined that plaintiff's post-concussive headache was the result of plaintiff being struck on the head. This opinion was based on a history of plaintiff having no headache before the head trauma, a loss of consciousness from the trauma, and the occurrence of headache following trauma. Dr. Pajeau also stated during her deposition that plaintiff would have been capable of work on a limited basis at the time of her examination on June 18, 2007. She would have limited plaintiff to lifting no more than 30 pounds with his right arm. She would have limited him from using his right arm on overhead work, limited him from any pushing, and any activities involving turning his head and neck.
23. Plaintiff's post-concussive headaches and neck pain were caused by the May 30, 2007 injury by accident.
23. Plaintiff has not returned to work as of the date of the evidentiary hearing in this matter.
24. No medical bills were offered into evidence.
25. As of the date of the evidentiary hearing, defendant-employer had not paid plaintiff any temporary total disability compensation or any of plaintiff's medical bills even *Page 8 
though defendant-employer did not have workers' compensation insurance to cover its employees as required by law. As such, plaintiff has been unable to continue medical treatment so that he can reach maximum medical improvement.
26. Defendant-employer had three or more employees from at least October 13, 2006 through May 30, 2007 and did not have workers' compensation insurance to cover its employees. Defendant-employer did not have workers' compensation insurance for at least 230 days. Wayne Ferrell and Peggy Thursby had the ability and authority to bring defendant-employer into compliance with the North Carolina Workers' Compensation Act and neglected to do so.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. All of the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2.
2. On May 30, 2007, an employment relationship existed between plaintiff and defendant-employer.
3. Plaintiff earned an average weekly wage of $750.00, yielding a weekly compensation rate of $500.00. N.C. Gen. Stat. § 97-2(5).
4. On May 30, 2007, plaintiff suffered an injury by accident when he was struck on the head by an overhead door in the course and scope of his employment with defendant. N.C. Gen. Stat. § 97-2.
5. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment *Page 9 
and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. Plaintiff is entitled to have defendant-employer pay temporary total disability compensation from May 31, 2007 through the date of Dr. Pajeau's deposition of February 8, 2008 when she opined that plaintiff was capable of some work. Thereafter, it remains plaintiff's burden to prove continuing disability after February 8, 2008. N.C. Gen. Stat. § 97-29; Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993).
7. Plaintiff is entitled to have defendant-employer pay all his medical expenses incurred or to be incurred as a result of his May 30, 2007 injury by accident that was reasonably required to affect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-25, 97-25.1.
8. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars *Page 10 
($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
9. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, willfully fails to bring the employer in compliance, shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1 misdemeanor. Any person who violates this subsection may be assessed a civil penalty by the Commission in an amount up to one hundred percent (100%) of the amount of any compensation due the employers' employees injured during the time the employer failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d).
10. Defendant-employer had three or more employees and no workers' compensation insurance from at least October 13, 2006 through May 30, 2007, which amounts to 230 days without workers' compensation insurance to cover its employees as required by the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-93.
11. Defendant L. Wayne Ferrell, as owner and president of defendant-employer, had the ability and authority to bring his business into compliance with the Act by obtaining workers' compensation insurance to cover his employees and neglected to do so.
12. Defendant Peggy J. Thursby, as a corporate officer of defendant-employer, had the ability and authority to bring the business into compliance with the Act by obtaining workers' compensation insurance to cover its employees and neglected to do so.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following: *Page 11 
 AWARD
1. Defendant-employer shall pay plaintiff temporary total disability benefits of $500.00 per week for the period of May 30, 2007 through February 8, 2008, subject to an attorney's fee set out below.
2. Defendant-employer shall pay plaintiff's counsel 25% of the accrued benefits that are due and owing.
3. Defendant-employer shall pay plaintiff for all medical treatment causally related to his injury by accident, including related prescriptions.
4. Defendant's counsel shall send a copy of this decision to all healthcare providers, who provided treatment reasonably related to plaintiff's injuries on May 30, 2007. The healthcare providers with outstanding bills in this matter shall not seek to obtain collection of these bills from Sczcepan Gorzkowski. Collection should be directed to defendant-employer Richway Development Corporation c/o L. Wayne Ferrell, 110 Zebulon Court, Rocky Mount, North Carolina, 27804.
5. Pursuant to N.C. Gen. Stat. § 97-94(b), a civil penalty in the amount of $50.00 per day is hereby assessed against defendant-employer Richway Development Corporation for failure to maintain workers' compensation coverage on its employees in North Carolina from at least October 13, 2006 through May 30, 2007, which amounts to 230 days. Defendant-employer shall make a check payable to the North Carolina Industrial Commission in the amount of $11,500.00 and send it to Assistant Attorney General Tracy C. Curtner at the office of the North Carolina Industrial Commission Fraud Section.
6. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty in the amount of 100% of the amount of the compensation due to plaintiff in this case is assessed against defendant L. Wayne Ferrell, individually, for failing to comply with N.C. Gen. Stat. § 97-93. A check in the amount of $18,200.00 (May 30, 2007 to February 8, 2008 is 36 weeks and 3 days multiplied by $500.00 = $18,200.00) shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney General Tracy Curtner at the office of the North Carolina Industrial Commission Fraud Section.
7. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty in the amount of 100% of the amount of the compensation due to Plaintiff in this case is assessed against *Page 12 
defendant Peggy J. Thursby, individually, for failing to comply with N.C. Gen. Stat. § 97-93. A check in the amount of $18,200.00 (May 30, 2007 to February 8, 2008 is 36 weeks and 3 days multiplied by $500.00 = $18,200.00) shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney General Tracy Curtner at the office of the North Carolina Industrial Commission Fraud Section.
8. Defendant-Employer shall pay the costs.
This the 8th day of December, 2008.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
 CONCURRING: S/_______________ BUCK LATTIMORE COMMISSIONER
CONCURRING IN A SEPARATE OPINION:
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER